This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ESTATE OF DANIEL RALPH GUTIERREZ,**
**by and through his personal representative,**
**JANET JARAMILLO, individually, and as**
**Next Friend of SAGE GUTIERREZ,**
**JORDAN GUTIERREZ, and**
**NOAH GUTIERREZ, minors,**

     Plaintiffs-Appellees,

v.                                **NO. 28,799**

**METEOR MONUMENT, LLC**
**d/b/a ALAMEDA METEOR,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Timothy L. Garcia, District Judge**

Vigil Law Firm, P.A.
Jacob G. Vigil
Albuquerque, NM

for Appellees

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth

Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

This appeal concerns the jury verdict against Defendant Meteor Monument, L.L.C. (Meteor) resulting from an automobile accident involving Defendant Dean Durand and Daniel Gutierrez that resulted in Gutierrez's death. *Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, L.L.C.*, 2012-NMSC-004, ¶ 1, 274 P.3d 97. The district court proceeding concluded in a jury verdict for Plaintiffs Estate of Daniel Ralph Gutierrez and Janet Jaramillo, individually and as next friend of Sage Gutierrez, Jordan Gutierrez, and Noah Gutierrez (Plaintiffs). *Id.* ¶ 2. This Court reversed the verdict with respect to Meteor's dram shop liability and remanded to the district court to conduct a new trial with respect to Plaintiffs' negligent hiring, retention, and supervision claim (negligent supervision claim). *Id.* ¶ 4. We concluded that Plaintiffs' vicarious liability claim was not argued to the jury, and we did not address Plaintiffs' punitive damages claim because of our holding on the negligent hiring claim. *Id.*

We now consider this appeal on remand from our Supreme Court, which reversed our opinion and instructed that we address the issues concerning punitive

damages. *Id.* ¶ 5. In this regard, Meteor argues that the district court erred in (1) refusing to dismiss the punitive damages claim against it because the award was not supported by an established cause of action; (2) refusing to disallow the punitive damages award because there was no evidence of ratification or reckless or wanton conduct by Meteor; and (3) refusing to disallow or remit the punitive damages. The opinions of this Court and our Supreme Court discuss the facts of this appeal, and we only discuss the facts underlying this opinion as necessary. We affirm.

**ESTABLISHED CAUSE OF ACTION**

After the jury verdict, Meteor moved the district court to dismiss the punitive damage award because Plaintiff Estate of Daniel Ralph Gutierrez failed to establish a claim for employer liability. On appeal, Meteor argues that "there was no evidence to support a finding that [Defendant Dean] Durand was within the scope of his employment [with Meteor] at the time of the accident," and, therefore, "there was no basis for punitive damages."

The only claim before us concerning the punitive damages award is that for negligent hiring, retention, and supervision; Plaintiff did not challenge our holding concerning the vicarious liability claim in its appeal to our Supreme Court. *Id.* ¶ 4. A negligent supervision claim is different from a claim based on vicarious liability. Negligent supervision requires an "employer's negligent acts or omissions in hiring

3

or retaining an employee when the employer knows or should know, through the exercise of reasonable care, that the employee is incompetent or unfit." *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 28, 142 N.M. 583, 168 P.3d 155. A negligent supervision claim does not depend on the employer's vicarious responsibility "for the employee's negligent acts under a theory of respondeat superior." *Id.*

In the district court, the parties requested a jury instruction concerning scope of employment. *Estate of Gutierrez*, 2012-NMSC-004, ¶ 26. The district court gave the instruction as modified by Meteor. *Id.* ¶ 27. In response to two separate jury questions during deliberations, the district court, with the consent of the parties, stated that it was necessary for the jury to find that Durand was acting within the scope of his employment for the jury to (1) find Meteor liable and (2) assess punitive damages. *Id.* ¶ 28.

Although the answers to these jury questions may not have been accurate, *see Lessard*, 2007-NMCA-122, ¶ 28, we do not believe that they materially impacted the jury's verdict. As our Supreme Court noted in discussing Plaintiffs' negligent supervision claim, "scope of employment may . . . be a factor" in a negligent supervision claim. *Estate of Gutierrez*, 2012-NMSC-004, ¶ 25. Indeed, the answers may have added an element for the jury to find before it could find liability or award

4

punitive damages. Its verdict indicates that it made such additional findings.

## METEOR'S CONDUCT

Meteor further argues that the district court should have disallowed the punitive damages award because there was no evidence that Meteor either ratified Durand's action or that it engaged in reckless or wanton conduct. We address each argument in turn.

### Scope of Employment and Ratification

Meteor first argues that the punitive damages award against it for the tortious conduct of Durand as its employee is improper because there was no showing that Durand acted within the scope of his employment and that Meteor participated in, authorized, or ratified Durand's tortious conduct. Meteor again emphasizes the district court's response to the jury that it could award punitive damages only if it found that Durand was acting within the scope of his employment at the time of the accident.

However, we do not agree that scope of employment or participation, authorization, or ratification pertain to a claim based on Durand's tortious conduct. Plaintiffs' claim of negligent hiring was for direct, not vicarious, liability. As we have discussed, although Durand's acting within the "scope of [his] employment may . . .

5

be a factor" in a negligent supervision claim, it is not an element of the claim. *Estate of Gutierrez*, 2012-NMSC-004, ¶ 25. Plaintiffs' negligent supervision claim did not depend on whether Durand acted within the scope of his employment or whether Meteor participated in, authorized, or ratified Durand's tortious conduct. It required only that, during Durand's employment with Meteor, Meteor became aware or should have become aware of problems with Durand "that indicated his unfitness," that Meteor failed "to take further action such as investigating, discharge or reassignment[,]" and that Plaintiffs' damages were caused by Meteor's negligent hiring, retention, or supervision of Durand. The punitive damages award is not deficient because of lack of evidence concerning scope of employment or Meteor's participation, authorization, or ratification.

**Reckless or Wanton Conduct of Meteor**

On the other hand, the punitive damages award did require evidence of reckless of wanton conduct on the part of Meteor. *See Peters Corp. v. N.M. Banquest Investors Corp.*, 2008-NMSC-039, ¶ 44, 144 N.M. 434, 188 P.3d 1185 (acknowledging that proof of "evil motive or culpable mental state" is required for punitive damages (internal quotation marks and citation omitted)). The jury instructions defined "reckless conduct" as "the intentional doing of an act with utter indifference to the consequences[,]" and "wanton conduct" as "the doing of an act

6

with utter indifference to or conscious disregard for a person's rights and/or safety."

There was evidence that Meteor employed Durand at its convenience store to maintain the premises. Durand regularly consumed alcoholic beverages at the premises and purchased alcoholic beverages at the store. He "was usually intoxicated by 3:00 or 4:00 p.m." On the day of the accident, Durand consumed seven 12-ounce cans of beer at the premises. He additionally purchased two 24-ounce cans of malt liquor early that afternoon. He drank one and exchanged the other for a cold can at around 6:00 p.m. The accident occurred thereafter when Durand was returning to the convenience store after driving a customer home. Meteor knew of Durand's drinking habits and intoxication. The evidence was sufficient for a jury to conclude that Meteor acted recklessly or wantonly with respect to its hiring, retention, or supervision of Durand.

**EXCESSIVE PUNITIVE DAMAGES**

Meteor lastly argues that the district court erred in refusing to remit or disallow the punitive damages award because it was excessive and a result of jury passion and prejudice. According to Meteor, the award violated the requirements of due process. We address the issue under de novo review, independently assessing the record. *See Aken v. Plains Electric Generation & Transmission Coop., Inc.*, 2002-NMSC-021, ¶ 17, 132 N.M. 401, 49 P.3d 662.

7

The jury awarded Plaintiffs $4,550,000 in compensatory damages. It apportioned fault sixty percent to Meteor and forty percent to Durand. It awarded punitive damages of $10,000,000 against Meteor and $10,000 against Durand.

With regard to Meteor's due process concern, it is our obligation to ensure that "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell* (*State Farm*), 538 U.S. 408, 426 (2003). To do so, we analyze the factors discussed in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996). *Aken*, 2002-NMSC-021, ¶ 19. As relevant to this case, they are: (1) the degree of reprehensibility of the defendant's conduct; and (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award. *Id.* ¶ 20.

As to the first factor, the evidence establishes a significant degree of reprehensibility. There was evidence that Meteor hired Durand with knowledge of his propensity to drink and drive and allowed him to work and remain on the convenience store premises while he regularly consumed liquor and became intoxicated, knowing that he would drive when leaving the premises. Moreover, Meteor sold Durand beer on the day of the accident. The dangers of drinking and driving are well known. *Mendoza v. Tamaya Enters., Inc.*, 2011-NMSC-030, ¶ 35, 150 N.M. 258, 258 P.3d

8

1050 (recognizing the "senseless havoc and destruction caused by intoxicated drivers" (internal quotation marks and citation omitted)). Meteor's actions demonstrated an indifference to and a reckless disregard for the health and safety of others—drivers and passengers whom Durand would encounter when leaving the convenience store premises. *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 32, 145 N.M. 350, 198 P.3d 376 (analyzing the types of conduct that determine reprehensibility).

As to the second factor, Plaintiffs suffered extraordinary injury and death as the result of the accident at issue in this case. The jury awarded compensatory damages in the amount of $4,550,000 and allocated sixty percent, $2,730,000, to Meteor. As in *Jolley*, we do not determine whether it is appropriate to consider the entire compensatory damages award or only Meteor's portion in reviewing Meteor's due process argument. *Jolley*, 2008-NMCA-164, ¶ 36. Rather, we consider whether the amount of the punitive damages award reflects the limited purposes of punishment and deterrence and whether the amount of an award is "so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason or justice." *Id.* (internal quotation marks and citation omitted.)

Analysis of the evidence in this case does not indicate that the punitive damages award was excessive in relation to the injury and compensatory damage award.

Plaintiffs' decedent, age 32, was struck and injured in a head-on crash while his motorcycle was stopped at an intersection. He later died. The jury attributed sixty percent comparative fault to Meteor. Even if it is appropriate for this Court to consider only the compensatory damages attributed to Meteor, the ratio of punitive damages to the harm suffered as quantified by the jury is 3.67 to 1. The amount was not excessive in the circumstances.

Nor must we reverse because the jury did not award a lesser ratio in view of the amount of its compensatory damage award. Meteor cites to the language of *State Farm*, 538 U.S. at 425. In that case, the United States Supreme Court addressed the lack of rigid benchmarks or ratios when examining the due process requirements of a punitive damage award. *Id.* It had noted the 4 to 1 ratio in *Gore*, 517 U.S. at 581, and noted the likelihood that single digit multipliers would comport with due process. *State Farm*, 538 U.S. at 425. In this context, the Court observed that when economic damages were small, a higher ratio may be appropriate, and, conversely, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* This latter language relied on by Meteor does not establish any requirement on which this Court can rely. Rather, it states only broad guidelines for a due process analysis.

Meteor also argues that the punitive damages award was excessive by contrasting it to the $10,000 punitive damages award against Durand. According to Meteor, "[t]here is no reasonable basis for the discrepancy in the amount of punitive damages, particularly given the fact that the actions of Durand were the direct cause of . . . Plaintiffs' damages." Regardless of whether Durand was the direct cause of the accident, the jury determined that Meteor's conduct contributed sixty percent to Plaintiffs' damages. As to the discrepancy between the punitive damages awarded against Meteor and Durand, a jury is entitled to consider the financial condition of a defendant in reaching a punitive damages award. *Cf. Gonzales v. Sansoy*, 103 N.M. 127, 131, 703 P.2d 904, 908 (Ct. App. 1984) (holding that the introduction of defendant's financial statement was relevant and admissible to the issue of punitive damages). Moreover, the issue for us on appeal does not address the award against Durand. The jury was entitled to decide that the larger award against Meteor better served the purposes of punishment and deterrence. As we have discussed, the award against Meteor does not violate due process guidelines.

**CONCLUSION**

We affirm the punitive damages award against Meteor.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**